Jennifer R. Schwartz, OSB #072978
Law Office of Jennifer R. Schwartz
2521 SW Hamilton Court
Portland, Oregon 97239
Tel: 503-780-8281
Email: jenniferroseschwartz@gmail.com

Lauren M. Rule, OSB #015174
ADVOCATES FOR THE WEST
3115 NE Sandy Blvd., Ste. 223
Portland, OR 97232
Tel: 503-914-6388
Email: lrule@advocateswest.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| **GREATER HELLS CANYON COUNCIL**, an Oregon nonprofit corporation, | Case Number:  2:18-cv-00054-SU |
| Plaintiff, | |
| v. | **STANDING DECLARATION OF VERONICA WARNOCK IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| **KRIS STEIN,** District Ranger, Hells Canyon National Recreation Area, Wallowa-Whitman National Forest, in her official capacity; and **UNITED STATES FOREST SERVICE**, an agency of the United States Department of Agriculture, | |
| Defendants, | |
| and | |
| **WALLOWA COUNTY**, a political subdivision of the State of Oregon, and **MCCLARAN RANCHES, INC**., an Oregon corporation. | |
| Defendant-Intervenors. | |

I, Veronica Warnock, declare as follows:

1.      My name is Veronica Warnock and I reside in Union County, Oregon.

2.      I am employed full-time by Greater Hells Canyon Council ("GHCC")[1] as their Conservation Director. I have been in this position for approximately 6 years. One of my primary responsibilities in this role is to review and comment on grazing reauthorizations and other management activities that are proposed on federal lands.

3.      I am familiar with and support GHCC's mission to connect, protect, and restore the wild lands, waters, native species and habitats of the Greater Hells Canyon Region, ensuring a legacy of healthy ecosystems for future generations.

4.      I regularly use and enjoy the lands and waters within the Lower Imnaha Range Analysis ("LIRA") area. I enjoy hiking, rafting, camping, and observing wildflower and wildlife within the LIRA area.

5.      I visit the lower Imnaha River and LIRA area on a regular basis. My father was the 5th generation in his family to live in the Imnaha Canyon. He was born on a ranch on the Imnaha River homesteaded by his great-great grandfather. It was at one time the largest ranch in Wallowa County. His relatives homesteaded throughout the Hells Canyon National Recreation Area ("HCNRA") with many landmarks being named after the Warnock's and their adventures working cattle in the Hells and Imnaha canyons. While that ranch is no longer in the family, visiting the Imnaha region and the LIRA area is something I do at least a few times annually. It is one of my favorite places in

---

[1] Formerly Hells Canyon Preservation Council

2 – DECLARATION OF VERONICA WARNOCK IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Northeast Oregon to go hiking, especially in the winter and spring when higher elevation trails are inaccessible.

6.      Because it's one of my favorite places in Northeast Oregon, I've hiked in the LIRA area, especially on the Cow Creek and Dug Bar trails, more times than I can recall. For example, in April 2016 I hiked through the LIRA area on the Dug Bar trail down to the Snake River where I camped for a night before driving out with my companions. I observed pastures within the Lone Pine Allotment that had been de-facto rested due to the grazing permit being revoked. These areas were high with grasses and had an abundance of wildflowers, which was in stark contrast to the adjoining pastures that had received no rest from cattle grazing. In many areas the grasses in those pastures had nearly been grazed to the ground and they lacked the diversity of plants that I observed in the rested pastures. I also observed soil sheared off canyon walls and livestock trampling in springs. I looked for Spalding's catchfly but was unable to find this once more abundant plant.

7.      I've also mountain biked, fished and rafted in the LIRA area. In September 2016, I rafted the Snake river along with other GHCC staffers, members, and grantors. We stopped along the Oregon side of the river in the LIRA area and Hells Canyon Wilderness. The area was marked by cow sign. This detracted from my experience of being in an untrammeled place – as designated Wilderness areas are meant to be.

8.      I plan to revisit the LIRA area in the future to hike and to camp. The next time will likely be in September of this year to hike the Cow Creek trail once the temperatures in the canyon have fallen to comfortable levels.

9.      I am also familiar with the LIRA area due to my role as Conservation Director for GHCC. The LIRA area is in the heart of GHCC's mission area and a place of great

3 – DECLARATION OF VERONICA WARNOCK IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

interest to our Grantors, Board of Directors and members. As GHCC's Conservation

Director I have reviewed all the LIRA project documents and am familiar with all

comments and objections to the project submitted by GHCC. GHCC first engaged in the

project by submitting scoping comments on September 13, 2011. In those comments we

asked the Forest Service to develop a reasonable range of alternatives including an

alternative that would reduce grazing levels, implement a rest-rotation schedule, and

other management techniques that would prioritize the management and enhancement of

natural resources, listed species, water quality, and streamside areas as required by the

Wallowa-Whitman Forest Plan and HCNRA Comprehensive Management Plan.

10.     In April of 2014 the draft LIRA Environmental Impact Statement ("EIS") was

released. I reviewed the draft EIS and associated project documents and prepared

comments on the proposed alternatives. In GHCC's comments, we noted that our request

below for the agency to explore an alternative that balanced grazing with the agency's

duty to protect federally listed species, water quality, and riparian habitat was ignored.

None of the proposed grazing alternatives considered reducing annual grazing levels or

avoiding grazing in areas with documented resource concerns (e.g. steep slopes with deep

soils prone to damage under the weight of heavy cows) and/or pastures with documented

Spalding's catchfly patches susceptible to trampling, soil degradation, and the further

spread of noxious weeds and invasive non-native plants.

11.     Due to the recognized unique nature of the HCNRA, the Hells Canyon

Wilderness and the Imnaha and Snake Wild and Scenic Rivers, and resulting stringent

legal requirements for these areas, we argued that failing to analyze such alternatives did

not meet the NEPA mandate to consider a reasonable range of alternatives. We also made

note of the agency's failure to adequately monitor rangeland conditions, stream conditions and threatened, endangered and sensitive plants as required by the WWNF Forest Plan and HCNRA CMP. Without such data, there was no way for the forest to show that grazing met or was moving towards the requirements in those Forest Plans. Fulfilling the agency's monitoring obligations is especially pertinent to Spalding's catchfly. The agency had only recently inventoried a portion of the LIRA area. But it didn't know what the trends were with regards to the plant's Hells Canyon population. I also wrote extensively about the failure of the draft EIS to adequately analyze impacts to Spalding's catchfly and to follow the grazing management guidelines in the catchfly's recovery plan. I asked that all of these issues be addressed prior to the final EIS and draft decision being issued.

12.     In March of 2015, the Forest Service issued the final EIS and draft LIRA decision without adequately addressing or resolving the concerns we raised in our comments on the draft EIS. After reviewing the final EIS, I asked the Forest Service to provide me with the Specialist Reports that the LIRA EIS relied upon. The agency refused to voluntarily provide that information, so I was forced to request the reports under the Freedom of Information Act.

13.     On May 1, 2015 GHCC submitted an objection to the final EIS and draft decision. Between the draft and final EIS the Forest Service did not conduct any additional inventorying or monitoring. They did not develop any new alternatives nor do any additional analysis of the impacts to various resources as we requested. In our objection we pointed to the agency's own assessment that the LIRA catchfly populations were being adversely impacted by current grazing—due to observations of trampling and

5 – DECLARATION OF VERONICA WARNOCK IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

habitat degradation near catchfly sites—but because the agency lacked any information

on both population and habitat trends the extent of those impacts was unknown. Without

monitoring data showing the agency's proposed grazing management was not impeding

the catchfly's viability and recovery, and with some current habitat data showing

degraded conditions in nearly all catchfly pastures, we asked that the final EIS and draft

decision be withdrawn. We asked that grazing management in the LIRA allotments be

revised to ensure consistency with all applicable laws, regulations and policies.

14.      I attended the objection resolution meeting on behalf of GHCC. At that meeting

the Forest Service stated unequivocally stated that they were unwilling to withdraw the

EIS and do additional analysis. The agency then asked me to provide an alternative

remedy that would resolve our objection. After the objection resolution meeting I spoke

with district staff with the aim of coming up with another remedy to address the concerns

raised in our objection. The staff I spoke with let me know that their recommendation to

their superiors was to put pastures with catchfly in "resource protection" thereby

removing cattle from those pastures without retiring them. We then proposed the same in

order to resolve GHCC's objection.

15.      This suggestion – to rest catchfly pastures/place them in "resource protection" –

was rejected by the district and forest leadership. We then requested that pastures be

rested until detrimental soil conditions and unsatisfactory range conditions improved and,

then, a monitoring and adaptive management strategy be implemented. This suggestion

was also rejected. Finally, we offered to drop our objection if all of the recommendations

contained within the LIRA specialists' reports and provided by the consulting agency (i.e.

the conservation recommendations from the U.S. Fish & Wildlife Service's ("FWS")

Biological Opinion) were implemented. This suggestion was also rejected.

16.    As outlined above, GHCC worked diligently to avoid litigating the LIRA grazing

reauthorizations. However, the minimal changes the Forest Service ultimately adopted

after the objection process still threatened an unacceptable level of harm to one of the

HCNRA's most imperiled native plants and its pollinator communities.

17.    GHCC views litigation as a last resort option.  After two grazing seasons had

passed since the Forest Service issued the 2015 final LIRA decision, I requested, through

the Freedom of Information Act, the current Allotment Management Plans ("AMPs") for

the LIRA allotments, which were supposed to be issued shortly after the ROD with all the

site-specific measures for ensuring habitat recovery.  I also requested copies of the 2015

to 2017 annual operating instructions ("AOIs") for the LIRA allotments and any new

survey/monitoring data related to botanical resources from 2015 to 2017.  I was

disappointed to see from the agency's response that it still had not issued any AMPs nor

had the agency adopted any of FWS's conservation recommendations in the 2016 or

2017 AOIs.  Also, they had no new survey or monitoring data for botanical resources.

18.    My interests, and those of GHCC, will be irreparably harmed if grazing activities

are not modified in the LIRA area to ensure the recovery of declining plants species

endemic to the HCNRA. My interests, and those of GHCC, would be protected if the

grazing activities within the LIRA area were modified to comply with the law.

//

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of August, 2018 in La Grande, Oregon.

_____

Veronica Warnock